IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY SMITH and RANDY CARTER, | ) |
| | ) |
| Plaintiffs, | |
| | ) |
| v. | CIVIL ACTION NO. 04-0730-CB-M |
| | ) |
| BRUNO'S SUPERMARKETS, INC., | |
| | ) |
| Defendant. | |

**OPINION and ORDER**

This matter is before the Court on a motion filed by defendant Bruno's Supermarkets, Inc. seeking summary judgment as to the claims of both plaintiffs. (Doc.53.) This order addresses the motion as it relates to plaintiff Kimberly Smith.[1] After due consideration of the motion, the evidence submitted by the parties and the applicable law, the Court concludes that the motion is due to be granted.

**Fact**s[2]

Plaintiff Kimberly Smith worked for Bruno's Supermarket's Inc., d/b/a Foodworld, from January 9, 2001 until she was placed on medical leave in February 2002.[3] Initially Smith worked

---

[1]The summary judgment motion with respect to the claims of plaintiff Randy Carter are addressed by separate order.

[2]In accordance with summary judgment standards, the facts are set out in the light most favorable to the non-moving party. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992).

[3]Plaintiff was working at the Dauphin Street Delchamps store, formerly owned by Delchamps and Jitney Jungle, at the time Bruno's purchased it in 2001.

as a receiving clerk at the defendant's Dauphin Street store in Mobile. In January 2002, she was transferred to the defendant's Government Street store, also in Mobile, where she was assigned to work as a cashier.[4] After learning of the transfer, plaintiff met with David Sullivan, the manager of the Government Street store and explained that she was not sure if she would be able to perform the cashier job due to a back injury she had sustained in the past. Sullivan told Smith that there were no other positions available and asked her to try the position or provide written medical restrictions. Plaintiff began working as a cashier on January 7, 2002. On January 28, 2002, plaintiff provided Sullivan with written medical restrictions from her doctor which stated that she could not lift more than 15 pounds and could not stand more than two hours without changing positions. Sullivan told plaintiff to continue working as a cashier, while he discussed with Alice Keel, district manager, the possibility of moving plaintiff to another position. Plaintiff conveyed to various members of management her concerns about being required to perform job duties outside her medical restrictions.

On February 17, 2002, plaintiff injured her back at work and requested permission to leave. This was plaintiff's last day of work at Bruno's. On March 4, 2002, Bruno's received new medical restrictions from plaintiff's physician which prohibited plaintiff from "prolonged standing" and from lifting more than 25 pounds. Plaintiff was placed on medical leave. On April 1, 2002, plaintiff brought Sullivan notes from her doctors containing the following limitations: no standing for more than one hour without a 15-minute break, no repetitive stooping, squatting or bending at the waist and, no lifting of greater than 20-25 pounds. On

---

[4]The transfer came about as a result of threats made by plaintiff's husband to one of her coworkers at the Dauphin Street store, who accused the coworker of having an affair with plaintiff. For the safety of the coworker, Bruno's transferred plaintiff.

2

April 3, 2002, plaintiff was advised by Bruno's that the company could not accommodate her restrictions.  Bruno's requested that plaintiff provide it with a functional capacity evaluation. Plaintiff did so on June 10, 2002.[5]   That evaluation concluded that plaintiff could lift up to 25 pounds but that she was limited in prolonged standing, sitting and trunk flexion.

While she was on medical leave, plaintiff spoke with Dan Burchfield, Bruno's human resources director, about other positions.[6]  She asked to be considered for the position of bookkeeper or back door receiver and may have also talked with him about a position as customer service representative.  While Burchfield (and Bruno's) deny that there were any job openings at area stores during this time period, plaintiff has presented evidence that there may have been a bookkeeper position open at the Saraland store and a customer service representative position open at the Government Street store.[7]  However, even assuming that a position had been open, Burchfield concluded that neither those–nor any other position--could be modified to

---

[5]In her proposed findings of fact, plaintiff states that she provided the functional capacity evaluation to Bruno's on June 10, 2002 but that it was not faxed to human resources until June 26, 2002.

[6]Plaintiff's store manager, David Sullivan, also discussed with plaintiff the possibility of trying to accommodate her restrictions by allowing her to work part-time as a cashier and part-time in another position.  Even plaintiff concedes that it this was not feasible because "with my restrictions with the bending and things like that I probably couldn't even do it [the cashier position] an hour."  (Smith Dep., Doc. 55, Ex. 7, at 107.)

[7]In her proposed statement of facts (Doc. 59, Ex. 1), plaintiff asserts that there were several open positions in the Mobile/Baldwin County area that she could have performed with her restrictions including but not limited to, Courtesy Clerk, Back Door Receiver, Scan Clerk, Customer Service Representative and Bookkeeper."  (Pltf.'s Rsp., Doc. 59, Ex. 1., ¶ 28.) However, the evidence cited in support refers only to openings in the customer service and bookkeeper positions.  The Court notes that in this instance, and several others, some of the exhibit numbers cited by plaintiff as factual support do not correspond with exhibits listed on the docket sheet.  For instance, documents 17 and 20, cited in support of the foregoing facts Exhibit 17 is a doctor's not, and Exhibit 20 is a chart listing employees allowed to return to work with restrictions.

accommodate plaintiff's restrictions.  Store positions that did not require cashier duties included physical requirement, such as lifting, standing, bending and stooping, that were outside plaintiff's medical restrictions. With respect to the bookkeeper and customer service jobs, "these positions also functioned as cashiers, with all of the physical requirements of a cashier position, which included the ability to lift up to forty pounds as well as the ability to stand in one place for extended periods of time, bend and twist at the waist and stoop."   (Burchfield Decl. ¶ 7, Doc. 55, Ex. 9.)

On June 28, 2002, Bruno's notified Smith that it was unable to accommodate her and placed her back on medical leave.  In accordance with the applicable collective bargaining agreement, plaintiff remained on medical leave for a one-year period.  At the end of that period, in February 2003, Bruno's terminated plaintiff's employment.

Since the fall of 2002, plaintiff has been employed as a school bus driver for the Mobile County school system.  Plaintiff is currently treated by a doctor every two to three months for back and hip pain.  She is able to walk for exercise three to four times per week.  She can sit for two hours at a time.  She is unable to bend or twist but can stoop, squat, climb and balance.  She wakes up with back pain two or three times a week.  Plaintiff performs most household chores except sweeping and vacuuming.  She attends to her own personal needs without assistance.

**Legal Analysis**

    **Standard of Review**

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference

to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id*.

"If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must not weigh the evidence or make credibility determinations and must draw all inferences in favor of the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992).

**Issues Raised & ADA Framework**

The Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (ADA), prohibits employers from discriminating against "a qualified individual with a disability." 42 U.S.C. § 12112(a). More specifically, for purposes of this case, the ADA forbids the discharge of such an individual "because of his disability." *Id.* "The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims." *Hilburn v. Murata Electornics N.A., Inc.*, 181 F.3d 1220 (11th Cir. 1999). This means that plaintiff has the initial burden of proving, as part of her prima facie case, that: "(1) [s]he is disabled; (2) that [s]he was a qualified individual at the relevant time, meaning that [s]he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) [s]he was discriminated against her because of her disability." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d

1249, 1256 (11th Cir. 2001).  Defendant asserts that plaintiff's proof is insufficient with respect to two elements of the prima facie case. Defendant argues, first, that plaintiff is not disabled within the meaning of the ADA and, second, that plaintiff was not a qualified individual.  For reasons discussed below, the Court agrees that plaintiff has failed to create a genuine issue of material fact as to either of these elements.

### Plaintiff's Evidence of Disability is Insufficient

The ADA defines the term disability to include "a physical or mental impairment that substantially limits one or more . . major life activities." 42 U.S.C. §12102(2)(A).[8]  A finding of disability requires proof of three elements: (1) an impairment; (2) a major life activity affected by the impairment; and (3) evidence that the impairment "substantially limits" that major life activity as compared with the ability of average person in the general population to perform same activity.  *Rossbach v. City of Miami*, 371 F.3d 1354 (11th Cir. 2004).  Defendant does not dispute that plaintiff's back injury is an impairment.  The question is whether there is evidence from which a jury could conclude that this injury substantially limits plaintiff's ability to perform a of major life activity.

A person is substantially limited in a major life activity if he is  "'significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity .'"  *Id.* at 1347 (quoting 28 C.F.R. § 1630.2(j)(1). Plaintiff has provided a laundry list of activities–lifting, sleeping, performing manual tasks, sitting, standing, bending, twisting, caring for oneself and working–that she contends are major

---

[8]The ADA's definition of disability also includes having "a record of such an impairment" or "being regarded as having such an impairment."  42 U.S.C. § 12102(2)(B) & (C).   Plaintiff's claim is not based on either of these types of disability.

life activities "impacted" by her impairment.[9]  With the exception of working, plaintiff's own affidavit is the sole evidence cited as proof of the effects her injury has had on life activities.  In her affidavit testimony, plaintiff claims that her back injury "substantially affects" her ability to "sleep, stand, sit and walk" and her ability "to engage in sexual activity, lifting, manual tasks, pushing, pulling and crawling and bending."  (Pltf.'s Aff., Ex. 5, Doc. 59 at 1-2.)  These are merely conclusory allegations[10] that "'without specific supporting facts[ ] have no probative value.'"  *HIlburn v. Murata Electronics N.A., Inc.*, 181 F.3d 1220, 1227-28 (11th Cir. 1999) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).[11]  Not only has plaintiff offered only unsupported conclusions, many of these conclusions are contradicted by plaintiff's own deposition testimony.  According to her deposition, plaintiff exercises three to four times a week by walking outside or using an exercise video.  She also has the ability to kneel, stoop squat, climb and balance.  Plaintiff is able to attend to all of her own personal needs without assistance, and she can perform household chores except for sweeping and vacuuming.

---

[9]Not all of these activities necessarily qualify as major life activities within the meaning of the ADA.  The term "major life activities" is defined by examples set forth in regulations interpreting the Rehabilitation Act of 1973 to include "'functions such as caring for oneself, performing manual tasks, walking seeing, hearing speaking , breathing, learning and working.'" *Rossbach,* 371 F.3d at 1347 (quoting 45 C.F.R. § 84.3(j)(2)(ii)).  This Court need not determine which of the activities cited qualify as major life activities, however, since plaintiff has failed to present sufficient evidence to demonstrate that she is substantially limited in any of these activities.

[10]The Court will assume, *arguendo*, that plaintiff intended  evidence that these activities were "substantially impacted" to prove the "substantially limited" prong of her disability claim.

[11]In *HIlburn*, the plaintiff claimed to be substantially limited in her ability to run.  The evidence upon which she relied to support this assertion was her doctor's affidavit testimony that plaintiff had a diminished tolerance for running.  Because the record was devoid of specific facts to support this statement, the appellate court found that plaintiff "had not created a genuine issue of material fact concerning whether her coronary heart disease substantially limits the major life activity of running."  *Id.* at 1228.

Plaintiff cites the affidavit of her vocational expert as proof that she is substantially limited in her ability to work, but that evidence is also insufficient. To prevail plaintiff must demonstrate that she was "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Rossbach,* 371 F.3d at 1359 (quoting 29 C.F.R. § 1630.2(j)(3)(I). The determination whether a plaintiff is substantially limited in her ability to work is an individualized inquiry. *See Burns v. Coca-Cola Enterprises, In*c.*,* 222 F.3d 247, 256 (6th Cir. 2000). Plaintiff's education level, training, job skills, expertise, knowledge and work history–including her post-impairment work history–are essential to the inquiry. *Gelabert-Ladenheim v. American Airlines*, 252 F.3d 54, 59 (1st Cir. 2001). Also important is the availability of jobs in the general economy for which plaintiff is qualified. *Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1114-15 (D.C. Cir. 2001). Plaintiff relies on the testimony of her expert, Norma Stricklin, that "as a result of [plaintiff's] physical impairment and medical restrictions, she has loss [sic] access to jobs defined as medium and/or heavy by the Department of Labor [and] . . . has been cut off from performing all jobs that require heavy and/or medium work as part of the essential functions of those positions." (Stricklin Aff., Doc. 59, ¶ 4.) But plaintiff provides no information as to what other jobs are currently available, taking into account her education, skills and training. Moreover, defendant has presented evidence that plaintiff is currently working as a bus driver. In sum, from the summary judgment record, a jury could not conclude that plaintiff's back injury substantially limited her ability to work.

**Plaintiff has Failed to Present Evidence that She Was Qualified**

Plaintiff does not dispute that she cannot perform the essential functions of the cashier position she held at Bruno's. Instead, she contends that she is qualified–with reasonable accommodation–because there were other positions vacant during the relevant time period that she could have performed. Plaintiff also argues that defendant failed to provide reasonable accommodation because it did not engage in an interactive process with plaintiff to determine an appropriate accommodation. In addition, plaintiff contends that the defendant has failed to meet its burden of proof because it has failed to offer evidence that the accommodations identified would impose an undue hardship on it. Each of these issues is addressed below.

### Reasonable Accommodation

A qualified individual with a disability is one who, with or without reasonable accommodation, can perform the essential functions of his job. 42 U.S.C. § 12111(8). An employer who fails to provide a reasonable accommodation is liable for discrimination unless the accommodation would impose an undue hardship on the employer. *Lucas,* 257 F.3d at 1256. A plaintiff has the burden of identifying a reasonable accommodation as well as the ultimate burden of persuasion that accommodation is reasonable. *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000). If the plaintiff meets that burden, then the defendant must prove that the reasonable accommodation imposes an undue hardship. *Willis v. Conopco*, *Inc.* 108 F.3d 282 (11th Cir. 1997).

While plaintiff does not dispute that her back injury prevented her from working as a cashier, she has identified an accommodation that she contends was reasonable–transfer to one of several different positions at Bruno's. Reassignment to a vacant position may be a reasonable accommodation under the ADA. *Lucas*, at 1256. Not only must plaintiff prove that there was a

vacancy in one of the positions during the relevant time period, she must also prove that she was "otherwise qualified" for that position.  *Id.*  An employee is "otherwise qualified" for an alternative position if he or she could perform the essential functions of the job with or without reasonable accommodation.  *Id.*

Plaintiff has identified two specific positions she believes were vacant–bookkeeper and customer service representative–and has offered evidence that she requested transfer to each.[12] Bruno's has presented evidence, however, that both of "those positions also functioned as cashiers, with all of the physical requirements of a cashier position, which included the ability to lift up to forty pounds as well as the ability to stand in one place for extended periods of time, bend and twist at the waist and stoop."  (Burchfield Decl. ¶ 7, Doc. 55, Ex. 9.)  Since the positions plaintiff has identified would have required her to perform some of the same duties she was restricted from performing as a cashier, Bruno's asserts that the proposed accommodation is not a reasonable one.  Plaintiff argues that she could have performed these positions with reasonable accommodation–even though she could not have worked as a cashier--because Bruno's could simply have provided assistance with lifting.  Why this accommodation would have allowed her to perform the customer service and/or bookkeeping positions but not the cashier position is unexplained.  Plaintiff merely asserts that in her experience, "the lifting requirement is an incidental requirement of the position,[13] rather than essential, and could easily

---

[12] While plaintiff, in her proposed findings of fact has identified other positions she contends she was capable of performing, *e.g.*, scanner, back door receiver, she has neither included those positions in her legal argument nor identified any vacancies available during the relevant time period.

[13] Plaintiff does not identify specifically the position to which this argument relates.

be allocated without any burden being placed on the facility other than potentially a few minutes delay to customers." (Plft.'s Brf. at 9.) Even if plaintiff's conclusory assertion could be considered evidence that lifting is not an essential function of one or both of the positions[14] (or is one that can readily be allocated to someone else[15]), she has failed to address the other essential requirements that her medical restrictions prevent her from performing, *i.e.*, standing for extended periods, bending, twisting and stooping.[16]  In sum, plaintiff has failed to identify a reasonable accommodation that would have allowed her to continue her employment with Bruno's.

### The Interactive Process

---

[14] Since plaintiff does not contend that lifting is not an essential function of the cashier position, it is difficult to understand her assertion that it is not an essential function of the other positions that require cashier duties.

[15] The unreasonableness of the proposed accommodation is self-evident from plaintiff's argument–allocating the lifting duty would result in a potential delay to customers.

[16] Plaintiff has also cited the affidavit of her vocational expert, Norma Stricklin, to support her reasonable accommodation argument.  Ms. Stricklin's affidavit does not specifically address any position at Bruno's or any proposed accommodation that would have allowed plaintiff to perform an existing position.  Instead, Ms. Stricklin refers generally to jobs in the grocery store field.  For example, she states that "[a]fter reviewing the Department of Labor's Dictionary of Occupational Titles, Ms Smith appears to be capable of holding an number of jobs in the grocery industry including, but not limited to, receiving clerk, payroll clerk, timekeeper, general clerk, price checker and price marker either with or without accommodation."  Ms. Stricklin's opinion is based on plaintiff's medical condition and restrictions and "the essential functions *generally required* of such positions." (Stricklin Aff. ¶ 5 (emphasis added).)  With respect to accommodations, Ms. Stricklin testified: "Based upon my review of the Department of Labor's job descriptions for the above positions, I believe that Bruno's could have made accommodations and/or job modifications that would have allowed Ms. Smith to perform the essential functions of the above positions." (*Id.* at ¶ 6.)  It is Ms. Stricklin's opinion that these unspecified modifications "could have been attained without significant expense and/or burdens being placed on Bruno's." (*Id.*)  These generalities are insufficient to prove that plaintiff was otherwise qualified for a vacant position at Bruno's during the relevant time period.

Plaintiff appears to argue that the defendant failed to provide reasonable accommodation because it failed to engage in the interactive process to identify an accommodation that would allow her to continue to work. In guidelines interpreting the ADA, the EEOC's definition of "reasonable accommodation" includes the following statement:

> To determine the appropriate reasonable accommodation, it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3). While the Eleventh Circuit has assumed, without deciding, that an employer may have a duty to engage in the interactive process, that court has held the employer's violation of that duty does not, in itself, give rise to liability. *See Willis*, 108 F.3d at 285. Furthermore, whatever the duty to interact may be, it does not arise unless plaintiff has proven that a reasonable accommodation was possible. *Lucas,* 257 F.3d at 1256 n. 2. Since plaintiff has failed to demonstrate a genuine issue of material fact on the reasonable accommodation issue, the defendant's alleged failure to engage in the interactive process is irrelevant.

### Undue Hardship

Plaintiff has devoted much attention to the defendant's failure to prove that the accommodations she proposed would amount to an undue hardship. Plaintiff's argument is misplaced, however. The plaintiff bears the burden of proving that a reasonable accommodation exists, and if she does the defendant must prove that the reasonable accommodation imposes an undue hardship on it. *Willis*, 108 F.3d at 286. The burdens of proof are separate, although the questions of reasonableness and undue hardship are closely related. *Id.* The initial burden is on

the plaintiff to prove that the accommodation is reasonable, and the defendant is not required to prove 'undue hardship unless plaintiff first meets his burden of proving reasonable accommodation.  *Id.*  Since plaintiff has failed to meet her burden of proving the existence of a reasonable accommodation, the defendant has no burden of proving undue hardship.

**Conclusion**

Because plaintiff Kimberly Smith has failed to come forward with sufficient evidence to support a prima facie case, the defendant is entitled to summary judgment.  Accordingly, the motion for summary judgment is **GRANTED**.

**DONE** and **ORDERED** this the 22nd day of August, 2006.


*s/Charles R. Butler, Jr.*
**Senior United States District Judge**